IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENNETH FAHNESTOCK and LISA S. FAHNESTOCK** | : | Civil No. 1:13-CV-2417 |
| **Plaintiffs,** | : | |
| **v.** | : | |
| **EASTERN ALLIANCE INSURANCE COMPANY,** | : | |
| **Petitioner,** | : | |
| **v.** | : | |
| **LETTERKENNY BUSINESS PARK, LP, LETTERKENNY BUSINESS PARK, II, LP, INDUSTRIAL REALTY GROUP, LLC, STUART LICHER, UNITED STATES OF AMERICA, and U.S. ARMY CORPS OF ENGINEERS, DEPARTMENT OF THE ARMY UNITED STATES GOVERNMENT,** | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

In this diversity action, Plaintiffs allege that Defendants negligently maintained an unsafe premises which caused Plaintiff Kenneth Fahnestock to slip and fall, suffering permanent injuries at an army depot in Chambersburg, Pennsylvania. Because Mr. Fahnestock was injured during the scope of his employment, Eastern Alliance Insurance Company, his employer's workers' compensation carrier, indemnified him for lost wages and paid his medical

expenses.   Presently before the court is Eastern Alliance Insurance Company's petition to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2).

## I.   **BACKGROUND**

On September 22, 2011, Plaintiff Kenneth Fahnestock ("Mr. Fahnestock") was employed as a "material handler" by Ram-Tech Support Services ("Ram-Tech"), which is a government contractor that provides services to the Letterkenny Army Depot (the "Depot") in Chambersburg, Pennsylvania. (Doc. 12, ¶¶ 24-25.) Mr. Fahnestock alleges that leaking water accumulated in a men's bathroom at the Depot, creating a "dangerous and hazardous condition" that caused him to slip and fall and suffer "serious, permanent, and disabling personal injuries." (*Id.* at ¶¶ 27-28, 40.)

On September 19, 2013, Mr. Fahnestock and his wife, co-Plaintiff Lisa S. Fahnestock ("Mrs. Fahnestock"), filed a complaint against Letterkenny Business Park, L.P., Letterkenny Business Park, II, L.P., Industrial Realty Group, LLC, Stuart Licher, the United States of America, the United States Army Corps of Engineers, and the Department of the Army of the United States (collectively, "Defendants"). (*See* Doc. 1.) On July 21, 2014, the court granted Plaintiffs leave to file an amended complaint (Doc. 11), which was filed the same day (Doc. 12.) In addition to Mr. Fahnestock's negligence claim, Mrs. Fahnestock filed a loss of consortium claim, which has precipitated the instant petition. (*See id.* at ¶¶ 58-60.)

Since the action was initiated, discovery and case management deadlines have been routinely delayed because Mr. Fahnestock has been unable to participate in a deposition due to the injuries he sustained at the Depot. (*See* Docs. 25, 27, 29, 34, 36, 38, 40, & 42.) Currently, jury selection and trial are scheduled for July 5, 2017. (Doc. 47.)

As Ram-Tech's worker's compensation insurance carrier, Eastern Alliance Insurance Company ("Eastern") paid wage loss benefits to Mr. Fahnestock, as well as his medical bills, because he was injured "within the course and scope of his employment." (Doc. 43, p. 2 of 4.) Eastern avers that its worker's compensation lien totals $129,288.47, which continues to rise. [1] (*Id.*) Eastern has petitioned to intervene to "protect its sizeable lien" pursuant to Federal Rule of Civil Procedure 24(a)(2). (*Id.*) Plaintiffs oppose Eastern's attempt to intervene as premature, unwarranted, and argue that Eastern's interests are adequately represented. (Doc. 45, pp. 1-2 of 26.) The petition has been fully briefed (Docs. 43-1 & 45) and is ripe for disposition.

## II.   <u>LEGAL STANDARD</u>

A party may intervene as of right if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that

---

[1] While Plaintiffs dispute the amount of the worker's compensation lien, they concede that it is valid and legally enforceable. For purposes of Eastern's petition to intervene, the amount of the lien is immaterial.

disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A petition to intervene will be granted if the movant can demonstrate that its petition is timely, that it has identified "a sufficient interest in the underlying litigation" which would be "impaired or affected by the disposition of the underlying action," and "that the existing parties to the action do not adequately represent the prospective intervenor's interests." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (internal citation omitted). A district court may not grant the petition to intervene unless all factors are satisfied. *Id.* (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)).

## III.   DISCUSSION

As an initial matter, it is well-settled that "a federal court must apply the substantive laws of its forum state in diversity actions." *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).   Under Pennsylvania law, Eastern could partially or fully recoup its subrogated lien if Plaintiffs settle or win a favorable jury verdict.[2] However, Eastern can only recover funds which are apportioned to compensate Mr.

---

[2] Pennsylvania's Worker's Compensation law states, "[w]here the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe[e], his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer." 77 Pa. Cons. Stat. § 671 (West 2016).

Fahnestock for his physical injuries and economic damages, not funds allocated to Mrs. Fahnestock's loss of consortium claim. (*Id.* at p. 3 of 4.) Thus, Eastern argues that it must be allowed to intervene in this action to prevent Plaintiffs from securing a settlement or jury verdict that inequitably allocates any monetary award to Mrs. Fahnestock's loss of consortium claim. (*See* Doc. 43, p. 3 of 4.) Plaintiffs contend that intervention, especially at this early stage of the litigation, is not only premature, but unnecessary because their interest is aligned with Eastern's in securing the largest monetary award possible. (*See* Doc. 45, pp. 1-2 of 26.) The court will review the relevant factors to determine if intervention is appropriate at this time.

### A.    Is the Petition Timely?

A court reviews the timeliness of a petition to intervene based upon the totality of the circumstances. *Simmons v. Paran Mgmt. Co.*, Civ. No. 11-cv-0415, 2011 WL 2970969, *2 (M.D. Pa. July 20, 2011) (citing *Pennsylvania v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976)). Plaintiffs filed their complaint on September 19, 2013. (Doc. 1.) Discovery in this case has been repeatedly postponed, and case management deadlines have been extended, because Mr. Fahnestock has not been available for a deposition due to his current physical condition. (*See* Docs. 25, 27, 29, 34, 36, 38, 40, & 42.) Eastern filed its motion to intervene on September 26, 2016. (Doc. 43.) Although the present action has languished for more than three

years, the court finds that Eastern's petition is nevertheless timely. Delays in the discovery process could not be avoided due to Plaintiff's physical condition and extensions to the case management deadlines have been granted upon mutual request of the parties. Such delays cannot be held against Eastern. Furthermore, the petition to intervene will not unnecessarily delay the discovery process or trial.

### B.    Does Eastern Have an Interest in the Litigation That May Be Impaired?

A proposed intervenor's interest in the litigation "must be a legal interest as distinguished from interests of a general and indefinite character." *Liberty Mut. Ins. Co.*, 419 F.3d at 220 (quoting *Mountain Top Condo. Ass'n*, 72 F.3d at 366). Economic interests alone do not justify intervention, and "the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Id.*; *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) ("[I]ntervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought.") Under Pennsylvania law, a worker's compensation insurance carrier has a legally cognizable interest in the outcome of a tortious action brought by an insured employee against an alleged negligent third party, and the carrier could recover all of its expenses if the third party is held liable for the employee's injuries. *See* 77 Pa. Con. Stat. § 671.

As stated above, Eastern claims its subrogation lien equals $129,288.47, which represents Eastern's substantial interest in the outcome of the pending litigation. Plaintiffs could potentially recover sufficient funds to fully reimburse Eastern as a part of a settlement or upon a favorable jury verdict. Thus, the court finds that Eastern has a sufficient interest in the underlying litigation.

Having established Eastern's interest in the litigation, the next question is whether that interest is under threat of impairment. Eastern argues that the recovery of its lien could be jeopardized by a unilateral, arbitrary, or inequitable settlement or jury award. Because any recovery based upon Mrs. Fahnestock's loss of consortium claim would be immune from Eastern's subrogated lien, Plaintiffs would have an interest in allocating as much of any recovery to that claim in order to avoid Eastern's lien. Accordingly, the court finds that Eastern's interest is indeed under threat of impairment. *See Simmons*, 2011 WL 2970969 at *2; *see also Urmann v. Rockwood Cas. Ins. Co.*, 905 A.2d 513, 522-23 (Pa. Super. Ct. 2006) (citing *Darr Const. Co. v. W.C.A.B. (Walker)*, 715 A.2d 1075, 1080 (Pa. 1998)).

## C.    Are Eastern's Interests Adequately Represented by Plaintiffs?

The final factor necessary for intervention as of right is whether the prospective intervenor's interests are adequately represented by the existing parties. *See Liberty Mut. Ins. Co.*, 419 F.3d at 220 (citing *Kleissler*, 157 F.3d at 969). "This factor 'entails looking to such factors as proof of collusion between the

representative and the opposing party, any adverse interest between the applicant and the representative, and whether there is any indication that the representative has been less than diligent in prosecuting the litigation.'" *Simmons*, 2011 WL 2970969 at *3 (quoting *Olden v. Hagerstown Cash Register, Inc.*, 619 F.2d 271, 274-75 (3d Cir. 1980)). Eastern has not demonstrated that Plaintiffs have failed to diligently prosecute the case or colluded with Defendants to orchestrate a settlement that will unreasonably compensate Mrs. Fahnestock in order to shield Plaintiffs' recovery from Eastern's lien. *See Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) (citing *Olden*, 619 F.2d at 274-75) ("Representation is generally considered adequate if no collusion is *shown* between the representative and an opposing party.") (emphasis supplied).

Although the discovery process is not yet complete because, as stated above, Mr. Fahnestock's injuries have prevented him from being deposed, such delays could not have been avoided and cannot be attributed to a lack of diligence in prosecuting the case. Eastern's only allegation supporting its argument that the current legal representation is inadequate is that Plaintiffs' counsel has failed to communicate regularly with Eastern about the status of the case. (*See* Doc. 43, p. 2 of 4.) Even if such allegation proves true,[3] Plaintiffs' silence towards the insurance

---

[3] Plaintiffs' counsel vehemently denies that he has been unresponsive to Eastern's inquiries and cites a letter, dated August 16, 2016, that highlights a dispute over the amount of medical bills

carrier alone does not demonstrate that counsel is colluding with Defendants or is not adequately protecting Eastern's subrogation lien.

Despite the lack of evidence of any collusion or inadequacy of representation, there is no doubt that Eastern's interest in recovering its worker's compensation lien is adverse to Plaintiffs' interests in keeping as much of any future recovery as possible. Mrs. Fahnestock's loss of consortium recovery could effectively nullify Eastern's subrogation lien should any settlement or jury award lopsidedly allocate the recovery to her claim instead of Mr. Fahnestock's negligence claim. Therefore, unlike actions that involve only negligence claims, Eastern and Plaintiffs do not have a shared interest in pursuing the highest possible recovery, *see Kelley v. Wolff Petroleum, Inc.*, 595 A.2d 627, 628 (Pa. Super. Ct. 1991) (citing *McGinnis v. United Screw & Bolt Corp.*, 637 F. Supp. 9, 11 (E.D. Pa. 1985)), because Plaintiffs would benefit more from a recovery as to the loss of consortium claim, while Eastern would seek to recover as to the negligence claim first in order to satisfy its lien.

Nonetheless, intervention at this stage of the litigation, while any recovery on either claim remains speculative, is premature. *See McGinnis*, 637 F. Supp. at 11 (citing *Olden*, 619 F.2d at 275) ("[N]o conflict of interest [can] exist between the plaintiff and the carrier prior to a recovery by the plaintiff, and that in the

---

that Eastern has paid. (Doc. 45, p. 26 of 26, Ex. "B"). Plaintiffs also note that they settled their worker's compensation claim against Eastern. (*See* Doc. 45, Ex. "A").

(unlikely) event a conflict should arise after a verdict or settlement is reached, the carrier has 'ample opportunities to protect its interest' at that time, e.g., by moving to intervene prior to distribution of the fund created by the settlement or judgment.") (emphasis removed). Eastern will have an adequate opportunity to renew its petition to intervene in the event that Plaintiffs secure some form of recovery and Eastern believes that recovery is inequitably allocated to the loss of consortium claim. *See Urmann v. Rockwood Cas. Ins. Co.*, 905 A.2d 513, 522-23 (Pa. Super. Ct. 2006) (quoting *Darr Constr. Co.*, 715 A.2d at 1081) ("In the event the settlement is unreasonably apportioned, an employer may always seek recourse in the court of common pleas."). Should the case proceed to trial and a jury awards Mrs. Fahnestock damages for loss of consortium, Eastern can petition to intervene and request a judgment notwithstanding the verdict if it believes that the award is meritless or unreasonably harms their worker's compensation lien. *See* Fed. R. Civ. P. 59(e).

Eastern's remaining argument is that an insurance carrier does not have an independent cause of action against a third-party tortfeasor and must enforce its subrogated lien in the insured's negligence action against the responsible third party. *See Reliance Ins. Co. v. Richmond Mach. Co.*, 455 A.2d 686, 690 (Pa. Super. Ct. 1983). Therefore, if Eastern is denied intervention then it could be denied a legal remedy to protect its subrogated lien. (*See* Doc. 43, p. 3 of 4.) The holding in

*Reliance Insurance Co. v. Richmond Machine Co.*, however, is merely that an insurance carrier's exclusive remedy is out of the award to the injured employee, not that an insurance carrier must be allowed to intervene at the earliest possible stage of the insured's negligence action. *See id.* Federal Rule of Civil Procedure 24(a)(2) does not prevent a proposed intervenor from re-filing a petition if circumstances change as the litigation proceeds to a resolution. In fact, Eastern's lien "is against the recovery itself, not the claimant." *Mrkich v. W.C.A.B. (Allegheny Cty. Children & Youth Servs.)*, 801 A.2d 668, 675 (Pa. Commw. Ct. 2002) (citing *Rollins Outdoor Advert. v. W.C.A.B.*, 487 A.2d 794, 796 (Pa. 1985)). Under Pennsylvania law, "subrogation rights will not be affected by the way in which the claimant and third-party tortfeasor, or the fact-finder in their action, characterize the nature of the third-party recovery." *Thompson v. W.C.A.B. (USF & G Co.)*, 801 A.2d 635, 638 (Pa. Commw. Ct. 2002). As such, there is no danger that Eastern will be prejudiced by its subrogated lien being irreparably harmed if its petition to intervene is denied at this time.

Rather, there is a danger that Plaintiffs would be prejudiced if Eastern were allowed to intervene at this early stage of the litigation. Eastern's participation in discovery, dispositive motions, or trial could very well leave Plaintiffs with an additional adversary to the establishment of Mrs. Fahnestock's loss of consortium

claim. This additional consideration further counsels against allowing Eastern to intervene at this time.

## IV.  **CONCLUSION**

For the foregoing reasons, the court finds that Eastern's interests are adequately protected at this time and, therefore, its petition to intervene (Doc. 43) will be denied without prejudice to intervention at a later stage of this litigation, should it become appropriate.

An appropriate order will issue.

 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: December 21, 2016

12